Case Number  *CV 07-390-TUC-RCC*

# IN THE UNITED STATES DISTRICT COURT DISTRICT OF ARIZONA

IN RE: MILIVOJ MARINKOVIC,

Debtor

MEL MARIN,

Petitioner,



v.

U. S. BANKRUPTCY COURT, DIST. ARIZONA,
(CHAPTER 11 TRUSTEE, REAL PARTY),

Respondant,

From A Stay Order Dated 9/17/2003 Stopping An Adversary Action
In The United States Bankruptcy Court For The District Of Arizona,
Bankruptcy Action 02-000378 and Adversary Action 02-000159A
The Honorable James M. Marlar

## MOTION TO WITHDRAW THE REFERENCE AS TO A HOMESTEAD FUND OR PETITION FOR WRIT OF MANDAMUS

Mel M. Marin
P.O. Box 25563
Los Angeles, CA 90025
Petitioner
*Pro Se*
June 22, 2007

# TABLE OF CONTENTS

INTRODUCTION                                                6

JURISDICTION, ISSUES AND STANDARDS OF REVIEW   7

STATEMENT OF THE CASE                               8

SUMMARY OF ARGUMENTS                             10

ARGUMENTS                                                 11


I.   THE COURT DOES NOT LOSE JURISDICTION OVER
     ALL PROPERTY BECAUSE OF APPEAL ON ONE          11


II.  AT LEAST $75,000 OF THE $ 93,346 HOMESTEAD
     FUND IS EXEMPT                                          14


III. DEBTOR NEVER CONTROLLED THE FUND             16


IV.  THE BANKRUPTCY TRUSTEE WAIVED
     REVOCATION RIGHTS                                     20


V.   SON'S LIEN PROTECTS WHAT
     THE EXEMPTION DOES NOT                            23


VI.  COMING JURY DEMAND AND STATE CLAIMS
     COMPEL WITHDRAWAL                                  30


VII. THE TRUSTEE'S CONVERSION
     MUST BE DISGORGED                                    33

# TABLE  OF  AUTHORITIES

\*      = Cases that may be controlling or dispositive

Amin v. Khazindar, 12 Cal.App.4th 582, 589, 5 Cal. Rprtr. 224 (2003)      8

Avery v. Associated Seed Growers, 211 Cal.App.2d 613,
27 Cal.Rptr. 625, 637 [20](1963)      38

Boyarky v. Froccaro, 125 Misc.2d 352, 479 N.Y.S.2d 606 (1984)      26

Britton v. Co-op Banking Group, 916 F.2d 1405, 1412 [9](9th Cir. 1990)      12

Callie v. Near, 829 F.2d 888, 890 (9th Cir. 1987)      35

Citibank v. Kenney, 17 A.D.3d 305, 793 N.Y.S.2d 84 (2005)      26

Citibank (Arizona) v. Miller & Schroeder Financial, 168 Ariz. 178,
812 P.2d 996, 1001 [7] (App. 1990)      28

Cochrane v. Superior Court, 261 Cal.App.2d 201, 67 Cal.Rptr. 675 (1968)      7

Donovan v. Mazzola, 761 F.2d 1411, 1415 [3](9th Cir. 1985)      12

Dunmore v. United States, 358 F.3d 1107, 1114 (9th Cir. 2004)      12

Emerson v. Deschutes County Board of Commissioners,
46 Or.App. 247, 249-50, 610 P.2d 1259 (1980)      7

Hammes v. Tucson Newspapers, Inc., 324 F.2d. 101, 103 (9th Cir. 1963)      29

Holman v. Holman, 112 B.R. 356, 359 (9th Cir. BAP 1989)      19

In re: ACI-HDT Supply Co., 205 B.R. 231, 236 (9th Cir. BAP 1997)      31

In re: A & E Family Investment, LLC, 359 B.R. 249 (Bkrtcy. D. Ariz. 2007)   14

In re: Been, 153 F.3d 1034, 1036 (9th Cir. 1998)      14

In re: Beiny, 16 A.D.3d 221, 791 N.Y.S.2d 24 (2005)    36

In re: Boston Regional Medical Center, Inc., 265  B.R. 645, 651
[8] (Bkrtcy. D. Mass. 2001)    21

In re: Brunswick Hosp. Center, Inc., 156 B.R.
896, 901 [12](Bkrtcy. E.D.N.Y. 1993)    26

\*   In re: California Trade Technical Schools, Inc., 923 F.2d 641 (9th Cir 1991)    20

In re: Casimiro, 2006 W.L. 1581897, at p. 5 [5] (E.D. Cal. 2006)    32

In re: Castlerock Properties, 781 F.2d 159, 162 (9th Cir. 1986)    31

\*   In re: Ciotta, 222 B.R. 626, 629 [2](Bkrtcy. C.D. Cal. 1998)    16

In re: Cogar, 210 B.R. 803, 812 [16] (9th Cir. BAP 1997)    22

In re: Com 21, 2005 WL 1606357, at 4 [4](N.D. Cal. 2005)    32

In re: DeHaan, 275 B.R. 375, 2002 WL 471336 (Bkrtcy. D. Idaho 2002)    19

In re: Dunwell Heating & Air Conditioning Contr., 78 B.R. 667,
671 [3] (S.D.N.Y. 1987)    22

In re: Estate of Salus, 421 Pa. Super. 87, 617 A.2d 737, 741 [3](1992)    9

In re: G.I. Industries, Inc., 204 F.3d 1276, 1279 [5](9th Cir. 2000)    7

\*   In re: Golden, 789 F.2d 698, 701 [3] (9th Cir. 1986)    16

In re: Gitts, 116 B.R. 174, 178-79 [4](9th Cir. BAP 1990)    16

In re: Graziadei, 32 F.3d 1408, 1410 n. 2. (9th Cir. 1994)    35

In re: Hagel, 184 B.R. 793, 797 n.3 (9th Cir BAP 1995)    35

\*   In re: Harrell, 73 F.3d 218, 219 [1][2](9th Cir. 1996)    21

In re: Herman, 120 B.R. 127, 130 [2] (9th Cir. BAP 1990)    16

\*     In re: Hernandez, 287 B.R. 795, 805 [10] (Bkrtcy. D. Ariz. 2002)     22

In re: Ho, 265 B.R. 603, 605 [2](9th Cir. BAP 2001)     13

In re: Hyman, 123 B.R. 342, 348 [11] (9th Cir. BAP 1991)     15

In re: Lewis, 113 F.3d  1040 (9th Cir. 1997)     35

In re: Loretto Winery, Ltd., 898 F.2d 715, 718 [6](9th Cir. 1990)     26

\*     In re: Lovitt, 757 F.2d 1035, 1041[8-10] (9th Cir. 1985)     22

In re: Mantle, 153 F.3d 1082, 1085 (9th Cir. 1998)     30

In re: Melridge, 1990 WL 84500 (D. Or. 1990)     31

\*     In re Moffat, 107 B.R. 255, 259 [1] (Bkrtcy. C.D. Cal. 1989),
affirmed, 119 B.R. 201, affirmed, 959 F.2d 740 (9th Cir. )     9

\*     In re: Moses, 167  F.3d 470, 473 [2](9th Cir. 1999)     21

In re: Prestige, Ltd. Partnership-Concord, 223 B.R. 203, 207
[1](Bkrtcy. N.D. Cal. 1998)     12

\*     In re: Quintex  Entertainment, Inc., 950 F.2d 1492, 1495 [1](9th Cir. 1991)     22

In re: Rabin, 359 B.R. 242 (9th Cir. BAP 2006)     14

In re: Sanford, 8 B.R. 761, 764 [2] (Bkrtcy. N.D. Cal. 1981)     34

In re: Schmitt, 215 B.R. 417, 422 (9th Cir. BAP 1997)     23

In re: Schugg, 2006 WL 1455568 [10](D. Ariz. 2006)     35

In re: Stanton, 303 F.3d 939, 941 [3](9th Cir. 2002)     29

In re: Wade, 115 B.R. 222, 230 [7](9th Cir. BAP 1990)     12

Kern Oil & Refining Co. v. Tenneco Oil Co.,

840 F.2d 730, 734 [1](9th Cir. 1988)   11

Lehman v. Irving Trust Co., 55 N.Y.2d 97,
447 N.Y.S.2d 897, 898 [1,2](1982)   27

Matter of Commodore Corp., 86 B.R. 564, 567 [1] (N.D. Ind. 1988)   13

Mosier v. United Educ. & Software, 285 B.R. 442, 446 [8](C.D. Cal.2002)   36

Neary v. City Bank Farmers Trust Co., 260 A.D. 791,
24 N.Y.S.2d 264, 267 [6] (1940)   21

Nickel v. Bank of America Nat. Trust And Sav., 290 F.3d 1134,
1138 (9th Cir 2002)   27

Niel v. Barton, 108 Cal.App.2d 781, 239 P.2d 912, 913 (1952)   19

Security Farms v. Teamsters, 124 F.3d 999, 1008 [15](9th Cir 1997)   7

State v. Phelps, 67 Ariz. 215, 193 P.2d 921, 923 [2](1948)   7

Tivon v. England, 484 F.2d 639, 641 (9th Cir. 1973)   36

Tripati v. U.S. Bankruptcy Court for Eastern Dist. Of Texas,
180 B.R. 160, 163 [4] (Bkrtcy. E.D. Tex. 1995)   7

WCI Cable, Inc. v. Alaska R.R. Corp., 285 B.R. 476, 479 [3](D. Or. 2002)   13

Wells Fargo Bank v. PAL Investments, 96 Cal.App.3d 431, 438,
157 Cal.Rptr. 818 (1979)   26

Wells Fargo Bank v. Superior Court, 22 Cal.4th 201, 213 [16],
990 P.2d 591 (2000)   24

White v. Stump, 266 U.S. 310, 312, 45 S.Ct. 103 (1924)   14

Fratchter, W.F., IV SCOTT ON TRUSTS (4th )(1988) §345.2 (p. 553)   24

# INTRODUCTION

Contested property in the bankruptcy is this: Arizona apartments, a Homestead Fund, a house in NY, a house in PA, and causes of action.

In December 2002 in adversary action 02-29 the bankruptcy court ruled on the apartments. That was appealed and is now in the circuit as 07-15908.

Debtor's son then pursued a new adversary action 02-159, claiming the rest of the property listed in the bankruptcy belongs to son, is not in the estate, or is debtor's as exempt homestead property. The Chapter 11 Trustee, however, asked the judge to stay any ruling on other property including the Homestead Fund until the appeals as to the apartments are over. The judge granted it. The Chapter 11 Trustee then paid himself and others with that same "stayed" fund.

Debtor and son also filed actions to protect the NY and PA properties, which were dismissed, and those are on the way to the circuit after Judge Roll denied.

Up to now the debtor has had no lawyer for his appeals and has copied son's filings. But since the circuit barred son from the apartment litigation, son moves to try to free up money so Dad can hire a lawyer for that crucial appeal. Son argues the bankruptcy court has no discretion to stay a ruling on property that cannot possibly undermine an appeal, and it cripples debtor because he does not have other money to pay a lawyer. Conclusions are at p. 37 here.

# JURISDICTION, ISSUES AND STANDARDS OF REVIEW

The bankruptcy court granted a stay on adversary action 02-159 on the request of the Chapter 11 Trustee on the grounds that the court lost jurisdiction over all property in the bankruptcy when one was the subject of an appeal. Exhibit A1.

Mandamus is available to a creditor against a bankruptcy court if that court will not act and the creditor is not a party-debtor with appeal rights, and it is not subject to any limitations period. Tripati v. U.S. Bankruptcy Court for Eastern Dist. Of Texas, 180 B.R. 160, 163 [4] (Bkrtcy. E.D. Tex. 1995)(mandamus action by creditor against bankruptcy court); State v. Phelps, 67 Ariz. 215, 193 P.2d 921, 923 [2](1948) (mandamus to direct trial court to rule on a matter it refuses to rule on); Cochrane v. Superior Court, 261 Cal.App.2d 201, 67 Cal.Rptr. 675 (1968) (mandamus will lie to compel the court to act);  Emerson v. Deschutes County Board of Commissioners, 46 Or.App. 247, 249-50, 610 P.2d 1259 (1980) (mandamus is not subject to any limitations period).

The standard of review of whether a bankruptcy court possesses jurisdiction, is *de novo*. In re: G.I. Industries, Inc., 204 F.3d 1276, 1279 [5](9th Cir. 2000).

And under 28 U.S.C. §157(d) the district court may withdraw the reference for delay. Security Farms v. Teamsters, 124 F.3d 999, 1008 [15](9th Cir 1997) ("withdrawal for cause" includes inefficient use of judicial resources, delay").

# STATEMENT OF THE CASE

## Background

Exhibit A2 is the Chapter 11 Plan and Disclosure Statement.   It shows at A21 (at E) that the drafter of the plan describes the fund that came from the sale of the debtor's home in San Diego.   Because that plan was created by the Chapter 11 Trustee who is the real party defendant in this action, his own description is self-authenticating and thereby avoids more proof of where the fund came from.

Exhibit A24 is a copy of the Declaration of Homestead, showing it was recorded, although it may not be necessary that it be recorded ( CCCP § 704.920 per Amin v. Khazindar, 12 Cal.App.4th 582, 589, 5 Cal. Rprtr. 224 (2003)).

Exhibit A26 is a copy of the record from the bankruptcy court docket showing the schedules designating that entire $93,346 as exempt.

As the introduction says, after the apartments were ordered away by the bankruptcy judge, debtor's son commenced an adversary action with the purpose of getting a declaratory judgment on the remainder of the property in the bankruptcy, to rule that it is *not* in the debtor's bankruptcy estate because it is in a family trust, and debtor's son, this petitioner, has a lien on all of it and is the owner of it.   But the bankruptcy judge froze consideration on the fund at the request of the Chapter 11 Trustee because there was *another* appeal against the ruling on the apartments.

## What Son Seeks In This Petition

First, debtor's son will show that the disposition of this money does not effect any other appeal, so the ruling on the status should not have been stayed.

Second, debtor's son will show that this $93,346 can have only two possible characterizations. It is (1) a reversion notionally available to the estate so that an exemption can attach, and *at least* $75,000 of it is exempt and it must be released to debtor right away while the status of the rest can be determined in some months ahead; and (2) the rest of it is in a trust and not in the bankruptcy estate and cannot ever be put into the bankruptcy estate so the Chapter 11 Trustee has no authority to do anything with it except eventually to hand over all of the $93,346.

Debtor's son is not actually asking this court to determine *now* whether it is or is not in the bankruptcy estate. Instead, son is only asking this court to give up *now* the $75,000 because *at least* that much must be returned to debtor or son either way, without son waiving his lien or damaging the exemption. In re Moffat, 107 B.R. 255, 259 [1] (Bkrtcy. C.D. Cal. 1989), affirmed, 119 B.R. 201, affirmed, 959 F.2d 740 (9th Cir. ) (The homestead exemption applies even to property in a trust over which the debtors have only a beneficial interest.); In re: Estate of Salus, 421 Pa. Super. 87, 617 A.2d 737, 741 [3](1992)(trustee of a trust has right to commissions and he does not waive that right by failing to seek payment of commissions during dispute negotiations).

9

# SUMMARY OF ARGUMENTS

I.   THE COURT DOES NOT LOSE JURISDICTION OVER ALL PROPERTY BECAUSE OF APPEAL ON ONE PROPERTY

Cites the cases that show the bankruptcy court should not have frozen.

II.  AT LEAST $75,000 OF THE HOMESTEAD FUND IS EXEMPT

Shows debtor gave the proper notices to make the fund exempt.

III. DEBTOR NEVER CONTROLLED THE FUND

Shows the debtor was blocked from the fund for the 6 months that mattered.

IV.  THE TRUSTEE WAIVED REVOCATION RIGHTS

The bankruptcy trustee expressly rejected all executory contracts in the plan.

V.   SON'S LIEN PROTECTS WHAT THE EXEMPTION DOES NOT

Shows son's lien continued after filing so it is now far bigger than the fund.

VI.  JURY DEMAND AND STATE CLAIMS COMPEL WITHDRAWAL

Provides the bases for withdrawing the reference.

VII. THE TRUSTEE'S CONVERSION MUST BE DISGORGED

Shows the bankruptcy trustee has a duty to return all he took for himself and others and give back the entire $93,346 to debtor and son, pronto.

# I.

# THE COURT DOES NOT LOSE JURISDICTION OVER ALL PROPERTY BECAUSE OF APPEAL ON ONE PROPERTY

Son submits with this, a list of present appeals. This Court can see for itself whether any of those appeals touches the Homestead Fund. If not, then this court should stop the inaction and give at least $75,000 of it to debtor as exempt so debtor can use it to pay for an appeal attorney since debtor has no appeal lawyer.

The courts must stop rulings that would affect *only* matters on appeal:

It is true that filing a notice of appeal usually divests the district court of jurisdiction over matters appealed. . . . We have, for example, refused to consider amended findings of fact and conclusions of law filed after a notice of appeal. . . . This case differs from *Sumida, supra*, in which the district court filed both an order and findings and conclusions, and, after the notice of appeal was filed, attempted to amend both. We properly treated the appeal as one from the earlier filed order. The appellate court is entitled to review a fixed, rather than a mobile, record. Here the district court did not attempt to move the target.

Kern Oil & Refining Co. v. Tenneco Oil Co., 840 F.2d 730, 734 [1](9th Cir. 1988).

In another case the circuit explained that the court retains jurisdiction over other matters that are not issues in the appeal:

Absent a stay, an appeal seeking review of collateral orders does not deprive the trial court of jurisdiction over other proceedings in the case, and an appeal of an interlocutory order does not ordinarily deprive the district court of jurisdiction except with regard to the matters that are the subject of the appeal. Since the issue of arbitrariability was the only substantive issue presented in this appeal, the district court was not

divested of jurisdiction to proceed with the case on the merits.

Britton v. Co-op Banking Group, 916 F.2d 1405, 1412 [9](9th Cir. 1990).

The circuit in Britton, supra, also ruled that "severable" issues do not lose

jurisdiction if one is appealed.  Id, at n. 7.  See also, Donovan v. Mazzola, 761

F.2d 1411, 1415 [3](9th Cir. 1985)("appeal of one order does not necessarily

deprive the district court of jurisdiction over issues not raised in that order").

In most bankruptcies every property is "severable".  There is no "final

judgment rule", but the court instead treats a variety of rulings as  final for specific

properties or issues (Dunmore v. United States, 358 F.3d 1107, 1114 (9th Cir.

2004)), without taking away all of the jurisdiction of the bankruptcy court.  The

bankruptcy court then continues with remaining issues on other properties that do

not undermine the appeal.  In re: Prestige, Ltd. Partnership-Concord, 223 B.R. 203,

207 [1](Bkrtcy. N.D. Cal. 1998)(after appeal is filed as to one issue, bankruptcy

court may continue with issues that are not before the appellate court), affirmed,

234 F.3d 1108 (9th Cir. 2000); In re: Wade, 115 B.R. 222, 230 [7](9th Cir. BAP

1990)(claim in bankruptcy court for violation of automatic stay was a different

issue than the motion for relief from stay which was on appeal, so the appeal did

not divest the bankruptcy court of jurisdiction over the issue for violation of the

automatic stay even though they were related issues), affirmed, 948 F.2d 1122 (9th

Cir. 1991);  WCI Cable, Inc. v. Alaska R.R. Corp., 285 B.R. 476, 479 [3](D. Or.

2002)(appeal of order denying dismissal does not divest bankruptcy court of jurisdiction over the rest of the case);   In re: Ho, 265 B.R. 603, 605 [2](9th Cir. BAP 2001)(bankruptcy court may rule on a stay of its own order which is already on appeal, because it does not affect the appeal issues); Matter of Commodore Corp., 86 B.R. 564, 567 [1] (N.D. Ind. 1988)(appeal of confirmation of plan does not divest the jurisdiction of the court to enter an order on any of the "myriad" of issues in a bankruptcy that are not part of the appeal).

Given this, withdrawal of the reference is warranted because the bankruptcy court waited five *years* unnecessarily, to rule and delay alone constitutes good cause to withdraw.  Security Farms v. Teamsters, supra, 124 F.3d 999, 1008 [15](9th Cir 1997) ("cause" includes efficient use of judicial resources, delay").

Additionally, the baseless reprimand of the bankruptcy court to punish debtor and son for filing the bankruptcy which the law clearly allows it that son complained about in the previous motion to withdraw, demonstrates that the judge will continue to rule against debtor and son on every issue no matter what it is while continuing to protect the lawyers who have committed fraud and malpractice who are trustees.  That also guarantees all issues will come to this court after more delay anyway.

Mandamus can speed up the lower ruling but this history suggests the lower court will simply not rule before the circuit does, and that delay alone is damaging.

## II.

## AT LEAST $75,000 OF THE HOMESTEAD FUND IS EXEMPT

Now son shows debtor prevails on the main point.

Because a California house sold, California law is applied to dictate the requirements for and what the amount of the exemption will be.  In re: Been, 153 F.3d 1034, 1036 (9th Cir. 1998);  In re: Rabin, 359 B.R. 242 (9th Cir. BAP 2006)(California exemption amount applies to California property).

Because the date of filing of the bankruptcy fixes the amount the state allows for the exemption, and because this bankruptcy action was filed in 2002, the exempt amount would be $75,000.  White v. Stump, 266 U.S. 310, 312, 45 S.Ct. 103 (1924) (state law on the date of filing the bankruptcy is applied).

The bankruptcy court ordered the custodian of that money after the sale of the San Diego residence, to submit it to the Chapter 11 Trustee.   The transfer was ordered to determine if the fund is in the estate or exempt, and appears to be correct since *at that time* part of the Homestead Fund was not covered by son's lien:

> In a bankruptcy case, any entity having property . . .is generally required to turn over that property to the trustee if the trustee may use, sell, or lease the property, or if the debtor may exempt the property.

In re: A & E Family Investment, LLC, 359 B.R. 249, 256 (Bkrtcy. D. Ariz. 2007).

These exhibits cited above by themselves constitute a prima facie showing that at least $75,000 of the fund (the maximum under CA law) is exempt.

And an exemption may be asserted even if there is a lien on the property without destroying the lien.   In re Moffat, supra, 107 B.R. 255, 259-60 (Bkrtcy. C.D. Cal. 1989), affirmed, 119 B.R. 201, affirmed, 959 F.2d 740 (9th Cir. )    That Moffat, supra, court reasoned that a California homestead exemption applies even to property in a trust over which the debtors have only a beneficial interest, and because the debtor's bankruptcy estate holds a contingent reversionary interest in the beneficial interest of the trust property which the bankruptcy trustee *could* revoke, the debtor may claim the full exemption.

Because the full $75,000 is exempt, the Chapter 11 Trustee may not use any of it for any purpose.   In re Moffat, supra, 107 B.R. 255, 259 [1] (Bkrtcy. C.D. Cal. 1989), affirmed, 119 B.R. 201, affirmed, 959 F.2d 740 (9th Cir. )(homestead exemption removes property from plan);   In re: Hyman, supra, 123 B.R. 342, 348 [11] (9th Cir. BAP 1991) ("the debtor may remove some of the property by claiming exemptions").

(Note, Moffat, supra, also suggests that the bankruptcy trustee must take steps to take control of that fund and bring it out of the trust, but son shows below under IV that the bankruptcy trustee did not take those steps.)

## III.

## DEBTOR NEVER CONTROLLED THE FUND

Now to the objection of the Chapter 11 Trustee.

The Chapter 11 Trustee has the burden of proving the exemption did not

exist.   The debtor only has to list it to make it exempt.    In re: Ciotta, 222 B.R.

626, 629 [2](Bkrtcy. C.D. Cal. 1998)(A debtor has no duty to prove an exemption;

the trustee has the burden of proving it is not an exemption.)

In order to challenge the exemption, the challenger must prove at least two

things: (1) that the debtor had the ability to use or reinvest the fund over a six

month period immediately following the sale of the home, and (2) did not do so.  In

re: Golden, 789 F.2d 698, 701 [3] (9th Cir. 1986) ("The material fact here, as in

Widdershoven, is that the debtor had control of the proceeds for six months and did

not reinvest the proceeds in a new homestead."); In re: Herman, 120 B.R. 127, 130

[2] (9th Cir. BAP 1990); In re: Gitts, 116 B.R. 174, 178-79 [4](9th Cir. BAP

1990)(six month time within which to reinvest proceeds of homestead property

applies to time before the filing of the bankruptcy, as that is when the exemption is

established or not).

In this case because the property was sold in August 2000, the six month

window closed in February 2001, long before the bankruptcy was filed.

But during that time this debtor was not even permitted one *day* of control over the $93,346 fund.

Exhibit A28 is father's request to sell the San Diego house to avoid the complete loss after notice of foreclosure.   Mother did not want to sell and was willing to loose all of it by hiding in the house and not answering the door.   The motion was granted but the judge refused to allow debtor to reach the proceeds.

Exhibit A30 is the order of 5/17/00 the judge refused to allow reinvestment until the rights of all the parties would be determined which that judge said was not going to happen within the six month available due to the slow process.

Exhibit A31 are father's objections to the actions of mother's lawyer, warning the court and lawyer about IRS §1031 rules which require a sale into a special type of escrow and reinvestment of the proceeds within six months of sale to avoid taxes that would eliminate 100% of the sale proceeds.   He was ignored.

Exhibit A34 is a copy of the escrow check of 8/11/2000 supplied by mother's attorney showing the actual amount to be $93,346.53.

Exhibit A35 is son's 8/29/00 letter to mother's lawyer warning of the loss of the Arizona apartments, and seeking his cooperation to avoid the loss since the judges were not going to do anything in time.   He ignored it.

Exhibit A37 is a copy of the court order of January 30, 2001 after son moved to release some of those funds.   As this court can see from the order, that judge

17

refused to allow release of anything at all, until all the rights of the parties are determined by trial which would not be in time for the 6 month deadline.

Exhibit A38 is son's February 2001 plea to mother's attorney to cooperate before the six month deadline is over. Mother's lawyer refused.

Exhibit A39 is the 11/15/01 tax letter son garnered to show Mother's lawyer in the event the court's refusal to release the money might be construed as a tolling of the six month time to designate under IRS §1031, and the letter shows without reinvestment all the proceeds would be taken by taxes.

Exhibit A40 shows the delay was not son's doing. Debtor moved to join son as a party in summer 2000 (which was granted) in time for son to make the motion he made in January 2001 to the divorce court for release of the bare minimum of that money before the six month deadline a few days later. The judge refused, and would not release even $1,000 until he had a full trial that the court schedule would not allow in the few days left when the six months expired.

Exhibit A41 is the partial transcript of the divorce court in 2002, which shows a full year later the divorce court finally decided the trusts were valid and refused the request by Mother's lawyer to dissolve them, but declined to release any money even knowing parents could not reinvest the proceeds in time and lose everything.

Thus, the refusal of mother's lawyer and of the Family Court's schedule

prevented debtor from reinvesting the proceeds within six months as the IRS Code requires and, incidentally, as the state homestead statute also requires.

Given this, debtor's filing of bankruptcy to stop the threatened foreclosure of the $400,000 Arizona apartments and to get from the divorce court the $93,346 to hand-over to the bank to prevent the foreclosure (the bank demanded $70,000 as attorney's fees to prevent foreclosure) as part of a bankruptcy plan, was rational.

Debtor's wife does not speak for debtor.  The exemption belongs to him alone.  Holman v. Holman, 112 B.R. 356, 359 (9th Cir. BAP 1989)(debtor alone has the exclusive right to claim exemptions, and nondebtor spouse does not have that right); In re: DeHaan, 275 B.R. 375, 2002 WL 471336 (Bkrtcy. D. Idaho 2002) (non-filing spouse may not claim exemption on her own behalf since that right belongs solely to filing spouse).

She has no power over debtor's exemption so her refusals to cooperate with any attempt to take money out and reinvest cannot be imputed to the debtor. Niel v. Barton, 108 Cal.App.2d 781, 239 P.2d 912, 913 (1952)(estoppel or waiver may not be urged against a person not capable of acting in his own right).

After that filing of the bankruptcy, the record shows the Chapter 11 Trustee had the $93,346 and refused to release even half of it for debtor's medical care on son's request when debtor was in serious medical need.   Exhibit A47.

Thus, debtor was barred by courts from  reinvesting the proceeds.

## V.

## THE BANKRUPTCY TRUSTEE WAIVED REVOCATION RIGHTS

Although the bankruptcy trustee is accustomed to taking what he wants from a debtor's assets because of a general rule that a debtor's interests transfer to the bankruptcy estate automatically on filing a bankruptcy, that is not proper for trusts.

Two on-point circuit cases govern.

One panel ruled *property* in a trust does *not* go into the bankruptcy estate at all. In re: California Trade Technical Schools, Inc., 923 F.2d 641, 645 (9th Cir 1991) (California law is to be applied to determine if a trust is valid if the subject property is in California . . . and a mere beneficial or equitable title of a debtor to property in a revocable trust is not part of the debtor's estate in bankruptcy).

Another panel agreed with a bankruptcy court ruling that in a trust, while *property* does *not* go into the bankruptcy estate, the bankruptcy estate *does* get a *contingent* beneficial interest and it is on that interest that a homestead exemption applies. In re Moffat, supra, 107 B.R. 255, 259 [1] (Bkrtcy. C.D. Cal. 1989), affirmed, 119 B.R. 201, affirmed, 959 F.2d 740 (9th Cir. ).

These cases compel the conclusion that the $93, 346 fund did not go into the bankruptcy estate on filing of the bankruptcy.

That rule is also supported by law in this circuit, and in NY which controls the law of this trust, that filing a bankruptcy alone does not automatically revoke trust property.  In re: Moses, 167  F.3d 470, 473 [2](9th Cir. 1999)(under 11 U.S.C. §541 (c)(A)(2) a restriction on a beneficiary's interest in a trust which is enforceable under nonbankruptcy law serves "to exclude the trust corpus from the bankruptcy estate.");  Neary v. City Bank Farmers Trust Co., 260 A.D. 791, 24 N.Y.S.2d 264, 267 [6] (1940)(a trustee may refuse to revoke a trust until he first applies to a court to enforce the trustee's lien on the property for commissions and expenses).

Moreover, this circuit has actually ruled against the trustee on the more narrow issue: that the right to revoke personal property from a trust in Arizona, is not a right of the bankruptcy estate.    In re: Harrell, 73 F.3d 218, 219 [1][2](9th Cir. 1996) (threshold question of whether a right to revoke is in the estate is determined by state law and by Code §541; in Arizona such a right is *not* estate property).

And this is supported by the related theory which may be first impression in this circuit: that a trust is only an executory contract. In re: Boston Regional Medical Center, Inc., 265  B.R. 645, 651 [8] (Bkrtcy. D. Mass. 2001) (a trust is only a contract between the parties).

*If* a trust is an executory contract, then the revocation rights can only be exercised by motion to the bankruptcy court, and if successful the property would

only transfer on a motion, not automatically on bankruptcy filing:

> Because executory contracts and leases involve future liabilities as well as rights, however, an affirmative act of assumption by the trustee is required to bring the property into the estate in order to ensure that the estate is not charged with the liabilities except upon due deliberation. . . . Thus, executory contracts and leases do not vest in the trustee as of the date of the filing of the bankruptcy petition. They vest only upon the trustee's timely and affirmative act of assumption.

In re: Lovitt, 757 F.2d 1035, 1041[8-10] (9th Cir. 1985).

And courts in this circuit and in New York followed a similar rule to protect trust property and require the trustee make motions to reach that property, although they do not always use the word "executory": In re: Quintex Entertainment, Inc., 950 F.2d 1492, 1495 [1](9th Cir. 1991)("An executory contract does not become an asset of the estate until it is assumed . . . ."); In re: Hernandez, 287 B.R. 795, 805 [10] (Bkrtcy. D. Ariz. 2002) (bankruptcy trustee cannot exercise a contract right of a debtor, until he makes a formal motion to assume the debtor's rights or provides for their assumption in the plan); In re: Cogar, 210 B.R. 803, 812 [16] (9th Cir. BAP 1997) (Chapter 11 plan cannot modify rights in a trust); In re: Dunwell Heating & Air Conditioning Contr., 78 B.R. 667, 671 [3] (S.D.N.Y. 1987) (Chapter 7 trustee may not take administrative expense claim from property in a trust).

Finally, while the trustee *could have* tried to bring the power of revocation into the bankruptcy estate, he did not: "Under the Plan, the Trustee rejects all of Debtor's executory contracts." Plan, In re: Marinkovic, 02-378, p. 6 (C).

# VI.

# SON'S LIEN PROTECTS WHAT THE EXEMPTION DOES NOT

Thus, given that the $93,346 never left the trust, son's lien has continued to accrue. In re: Lovitt, supra, 757 F.2d 1035, 1041[8-10] (9th Cir. 1985) (executory contract rights of debtor do not vest in the bankruptcy trustee on filing of the bankruptcy, but on acts to assume the rights); In re: California Trade Technical Schools, Inc., supra, 923 F.2d 641, 645 (9th Cir 1991) (a mere beneficial or equitable title of a debtor to property in a revocable trust is not part of the bankruptcy estate); In re: Schmitt, 215 B.R. 417, 422 (9th Cir. BAP 1997) (same); In re: Cogar, supra, 210 B.R. 803, 812 [16] (9th Cir. BAP 1997) (Chapter 11 plan cannot modify rights in a trust).

The remaining issue is whether the trusts are good. And the terms of the trusts were reviewed by the following courts and upheld, although the NY bankruptcy court (A54) even added derogatory *dicta* in its order against debtor and son as provided by the Arizona bankruptcy judge but *still* upheld the validity of the trusts. California Probate Court (In re: The Trust of Milivoj and Eva Marinkovic, P175987 (Super. Ct. Cal. 3/10/00)(A48)); NY Supreme Court (Homestead Savings v. Marinkovic, 00-00319 (Sup.Ct. Oneida 2/20/01)(A51)), NY Bankruptcy Court (In re: Happy Trust Three, 01-66282 (Bkrtcy. N.D.N.Y. 1/31/02)(A53)).

And the California Family Court (<u>Marinkovic v. Marinkovic</u>, D456656 (Super. Ct. Cal. 1/4/2002)(A47)), heard and denied a motion to dissolve son's $70,000 lien which son filed in that state court.   So the validity of son's *lien* has been allowed by four courts, although no judge has yet addressed a lien amount.

Given that the trusts are good and son's right to a lien is valid, the only issue left is whether the *amount* of the lien is so large that it takes up 100% of the Homestead Fund so as to prevent the bankruptcy trustee from prevailing on a motion to bring the trust property (the fund) into the bankruptcy estate, *if* <u>In re: Harrell</u>, <u>supra</u> allowed it which does not seem so.  <u>Wells Fargo Bank v. Superior Court</u>, 22 Cal.4th 201, 213 [16] 990 P.2d 591 (2000)(when the trust gives a trustee the *right* to use trust funds for any purpose, or to reimburse the trustee, the funds dedicated no longer belong to the beneficiaries); Fratchter, W.F., IV SCOTT ON TRUSTS (4th )(1988) §345.2 (p. 553)(trustee's lien against the trust property effectively removes property from the trust).

But this court need not reach this question since  <u>In re: Harrell</u>, <u>supra</u>, and <u>In re: California Trade Technical Schools, Inc.</u>, <u>supra</u>, prevents it.   But in the event the court addresses son's lien, son's charging sheets are not complete because some records and receipts are in storage in other cities, and he would like the chance to bring the charge to the present.  But if this is not necessary, son would rather *not* foreclose on his lien and it should still be intact, because of the general rule in <u>In re:</u>

Estate of Salus, supra, 421 Pa. Super. 87, 617 A.2d 737, 741 [3](1992)(trustee has

right to commissions and he does not waive that right by failing to seek payment of

commissions during dispute negotiations).


## Showing   As   To   $70,000   Submitted   To   The   Bankruptcy   Court

Exhibit A57 is the trust into which half of the San Diego proceeds were

placed. HAPPY TRUST THREE was created by debtor on 11/22/99, then filed in

the County Clerk's Office in July 2000, with attached amendment.   Submitted

below on 12/25/02. It states as to son's interest in the San Diego house:

> 1.5     I hereby transfer $10 to my son Melvin to fund the trust. I also
> transfer this day my entire undivided one-half interest in the premises and
> land at 1151 Turquoise St., San Diego, CA 92109, also known as Lot 4 of
> Sapphire Terrace, in the City of San Diego, State of California according to
> Map thereof No. 3610 filed in the Office of the County Recorder of San
> Diego County March 19, 1957.

Exhibit A66 also filed in the bankruptcy court on 12/25/2002, is a quitclaim

deed notarized on 11/23/99, as formal but unnecessary step.

Exhibit A67 also filed 12/25/2002, is TRUST FIVE dated 12/18/99, which

transfers all of Mother's half interest into that same trust, and as the Court can see,

it was notarized, *and* witnessed, *and* includes a properly recorded quitclaim deed at

Exhibit A72 backing-up what is said at Article 1.5:

> I also transfer this day the entire undivided one-half ownership of my wife
> Eva Marinkovic of the following properties into the trust: 1151 Turquoise
> St.,

San Diego, house and personal property thereon and cars listed there . . . ; and lot, otherwise known as Lot 4 of Sapphire Terrace, in the City of San Diego . . ..

Exhibit A73 also filed 12/25/2002 is Mother's power of attorney giving debtor that right to execute Mother's rights as to property, as debtor did.

It applies NY law.  In re: Brunswick Hosp. Center, Inc., 156 B.R. 896, 901 [12](Bkrtcy. E.D.N.Y. 1993)(rights of parties in NY trust governed by NY law).

NY law (and this circuit law) deems a trust lien in the nature of a mortgage, valid upon agreement without recording anywhere (although the stamps on the paper here show it was *also* recorded).  Citibank v. Kenney, 17 A.D.3d 305, 793 N.Y.S.2d 84 (2005)(unrecorded lien as good as a recorded mortgage);  Boyarky v. Froccaro, 125 Misc.2d 352, 479 N.Y.S.2d 606 (1984)(informal words meant to imply mortgage are just as enforceable as a formal recorded mortgage);  In re: Loretto Winery, Ltd., 898 F.2d 715, 718 [6](9th Cir. 1990) (bankruptcy courts must enforce state lien laws which would effectively prevent the avoidance of the lien, even if it is a "secret" lien).  (Although the liened property is San Diego property and not NY property, the rule is still the same:  Wells Fargo Bank v. PAL Investments, 96 Cal.App.3d 431, 438, 157 Cal.Rptr. 818 (1979)(failure to record does not affect validity of mortgage lien).)

Exhibit A74 shows son's lien as of August 2001 before any bankruptcy, and Exhibit A76  is a copy of the hourly charges to year 2000.

As this Court can see from the terms of both trusts (similar words at A59 and

A70), express words give son a lien for hourly work at the same rate as attorneys

routinely charge in New York whether or not son is an attorney:

> 4.1 The trustee may take a reasonable payment for trust administration
> from the trust as the word "reasonable" is determined under New York
> law, or may pay himself an hourly rate for his time on trust business as
> he would charge as an attorney on behalf of any client in New York
> whether or not he is actively practicing law at the time; and may
> determine in his own discretion which standard of payment to use at
> the time and may alternate between those standards for different
> projects at different times.  He may charge the same hourly rate even
> if he is not actively practicing law or admitted to practice law in any state.

The compensation rule in New York is that while a statutory fee is usually imposed

(e.g., NY SPCA §2309), that statute cannot be used if the trust document provides

its own compensation scheme and that scheme in the trust must be followed

(amount always subject to court review for reasonableness).  Lehman v. Irving

Trust Co., 55 N.Y.2d 97, 447 N.Y.S.2d 897, 898 [1,2](1982).

The lien then follows the proceeds.  Nickel v. Bank of America Nat. Trust

And Sav., 290 F.3d 1134, 1138 (9th Cir 2002)(trust follows proceeds of sale).


**Son's Lien  Protects  The Entire  $93,346  Held  By  Bankruptcy  Trustee**

Exhibit A104 are the newer charge sheets which show that while son's lien

only came up to about $70,000 at bankruptcy filing, his lien is *now* so far over the

fund value that it exceeds the fund amount even if this Court allows son a trustee's

fee at a secretary's rate of $20 an hour.    The sheets show this was essentially a full time job for son to protect the trust property and his lien for the last five years, although much of the court filing could have been avoided if the bankruptcy trustee had given up the obviously exempt $75,000 years ago so debtor could hire bankruptcy counsel who knew what they were doing, rather than follow his son.

Further, under the law of the state of the trust and general trust law, son is entitled to payment for both his management acts and his court filings and is properly a principal in court in protecting property with his lien. In re: Davidson's Will, 173 Misc. 323, 17 N.Y.S.2d 790, 793 [4] (Surr. King's Co. 1940) (where son acted as both trustee and manager of settlor's business, he was entitled to both commissions as trustee and compensation for services as manager);   Perkins v. Gross, 26 Ariz. 219, 224 P. 620, 621 [4] (1924)(trustee in whose name the property is held is the proper party in action for damage to beneficial interest); Citibank (Arizona) v. Miller & Schroeder Financial, 168 Ariz. 178, 812 P.2d 996, 1001 [7] (App. 1990)(trustee has standing to prosecute case on behalf of the trust and beneficiaries).

Thus, had the Chapter 11 Trustee tried to bring the property out of the trusts and into the bankruptcy estate, he would have failed because as son's lien sheet shows, by October 2003 when the Chapter 11 Trustee moved to confirm the plan, son's lien for work on legal actions like those listed here was well over $100,000:

28

Monogram Credit v. Marinkovic, Pima County Justice Court, Civil 0107103 (on hold)
KB Interiors v. Marinkovic, Superior Court, Tucson, Civil 329827 (on hold)
First Select Credit v. Marinkovic, Pima County Justice Court, Civil 20006134 (on hold)
Marinkovic v. Marinkovic, Superior Court San Diego, D456656 (on hold)
In Re: Trust of Marinkovic, Probate Court of San Diego, P 175987 (judgment for son)
Midland v. Marinkovic, Superior Court Tucson, Civil C20010710  (on hold)
In Re: Happy Trust Three, Supreme Court, Oneida Co. (Surrogates), 01-0868 (dismissed)
In re: Marinkovic, U.S. Bankruptcy Court (D. Ariz.) 01-3665-JMM (dismissed)
Marinkovic v. U.S. Trustee, et al., 9th Cir. B.A.P. (AZ) 01-1544 (App.) (dismissed)
In re: Happy Trust Three, U.S. Bankruptcy Court (N.D.N.Y.) 01-66282 (dismissed)
In re: Happy Trust Three,  U.S. Dist. Ct. (N.D.N.Y.) 01-66282 (App.) (dismissed)
In re: Marinkovic, U.S. Bankruptcy Court (D. Ariz.) 02-378-JMM (this present case)
Marin v. LaSalle, Midland, et al., U.S. District Court (D. Ariz.) 01-50 (dismissed)
Marin v. LaSalle, et al, 9th Cir. (AZ) 01-17237 (App.) (affirmed)
Marinkovic v. Midland, U.S. District Court (D. Ariz. ) 01-102 (remanded and dismissed)

Since then, of course, son has litigated a dozen new appeals and charged the

trust.   Son hopes to seek remuneration from the bankruptcy trustee for his charges

to the trust for those appeals that were a waste of time since son would not have

filed them had the bankruptcy trustee given up the exempt fund to hire a lawyer.

(Separately, if In re: Lovitt, supra, did *not* apply to allow son's lien to accrue

under trust law, under *mortgage* law son's charges to protect the mortgage relate

back to the date of the execution of the mortgage in 1999.  In re: Stanton, 303 F.3d

939, 941 [3](9th Cir. 2002)(post-petition additions to a mortgage lien may move

from the date the mortgage was recorded and not when each advance is made later);

Hammes v. Tucson Newspapers, Inc., 324 F.2d. 101, 103 (9th Cir. 1963)(charges to

lien valid on date lien is made, not at later time when work is done). )

So, because son's lien did not take all of the fund on the date of filing of the

bankruptcy, *at that time* some of it could have been transferred into the estate had

the bankruptcy trustee made the motion, if In re: Harrell, supra did not apply to prevent it.   Or, as In re Moffat, supra, suggests, the contingent interest was part of the debtor's estate so the exemption could apply; but the property was *not*.   So the order to collect the sale proceeds from the Family Court was proper:

> any entity having property . . .is generally required
> to turn over that property to the trustee if the trustee may use, sell, or
> lease the property, or if the debtor may exempt the property.

In re: A & E Family Investment, LLC, supra, 359 B.R. 249, 256 (Bkrtcy. D. Ariz. 2007).   See also, In Re: Mantle, 153 F.3d 1082, 1085 (9th Cir. 1998)(debtor has right to have community property held by wife brought into bankruptcy and the family court merely ordering the sale of the property or later disposition does not constitute a division of property).

   But the bankruptcy trustee has failed to assume any trust right, has rejected those rights completely, and son's lien now takes all of the fund.

///

# VI.

## COMING JURY DEMAND AND STATE CLAIMS COMPEL WITHDRAWAL

So son's lien based on *state* law gives another legal basis for withdrawal. If   In re: Harrell, supra, and Moffat, supra, and the Chapter 11 Trustee's waiver of the right to move to revoke property from the trust by rejecting that right are not dispositive to cover the entire fund, then the next issue  will be the legitimacy and amount of the trust and son's lien on its property.  And trust law is all state law. This proceeding suggests conversion by the bankruptcy trustee against a non-debtor  (son) based on state trust and contract law which is not a core  action and, therefore, is a proper candidate for withdrawal separate from the "delay" reason given above:

> [A] state law claim against a non-debtor in his individual capacity . . . could not be a core proceeding merely by virtue of the catch-all provisions of §157(b)(2)(a) or (O).

In re: ACI-HDT Supply Co., 205 B.R. 231, 236 (9th Cir. BAP 1997).  See also, In re: Castlerock Properties, 781 F.2d 159, 162 (9th Cir. 1986) for the rule that state contract claims are not core bankruptcy proceedings so the bankruptcy court could only make recommendations to this district court anyway, thereby duplicating the same proceeding and generating more years of delay; In re: Melridge, 1990 WL

31

84500 (D. Or. 1990)(withdrawal granted over action which is normally a state tort).

Further, this could not be considered "an adversary proceeding to recover transferred estate property" as in In re: Bergtholdt, 2006 W.L. 3085736, at p. 2 [1](Bkrtcy. E.D. Cal. 2006), because the Homestead Fund is not estate property. It was not estate property when the bankruptcy trustee took it and used it to pay himself and lawyers. It was never ruled to be estate property and never could be.

(Son also has another reason for withdrawal of the reference, which is that the history of the bankruptcy judge's reprimands in his August 2002 orders giving away the $400,000 as punishment for debtor and son coming to the bankruptcy court in the first place, repeated as the bases of denials and further reprimands by subsequent NY and Arizona state and federal judges, suggests the bankruptcy judge will continue to rule along that bias and any order he issues will come here anyway. But the circuit may consider *this* basis as forum shopping and cannot be the basis for withdrawal. In re: Casimiro, 2006 WL 1581897, at p. 5 [5] (E.D. Cal. 2006).)

Note, however, to save research time for the court, that "disgorgement" which is part of this petition *has* been ruled to be a core bankruptcy action by one district court and is more properly in the bankruptcy court. In re: Com 21, 2005 WL 1606357, at 4 [4](N.D. Cal. 2005). Again, however, that district court was not faced with the bankruptcy court's refusal to rule for years, as here. Further, the 9th Circuit encourages courts to take bankruptcy issues piecemeal, and not lump

together elements which can confuse.  <u>Dunmore v. United States</u>, <u>supra</u>, (9th Cir.

2004).

Son contends that since this homestead action involves both core bankruptcy

issues the bankruptcy court could resolve, but *also* non-core contract and trust

issues, and after disgorgement may also involve state claims for fraud with jury

demands as in  <u>Matter of Evangeline Refining Co.</u>, 890 F.2d 1312, 1323-24

[13](5th Cir. 1989)(claims of fraud against bankruptcy trustee), to save years and

avoid 12 new appeals, withdrawal of the reference for the Homestead Fund is right.


## VII.

## THE   TRUSTEE'S   CONVERSION   MUST   BE   DISGORGED


The Disclosure Statement to the bankruptcy plan admits the Chapter 11

Trustee used that exempt fund to pay himself and others.  Exhibit A22 lns 4-9.

Son now shows the bankruptcy trustee knew he had no right to do that.

Exhibits A167 and A176 are portions of the transcript in which the judge

makes it clear that notwithstanding his rulings allowing the bankruptcy trustee to

pay his own fees and to pay a settlement with Mother's lawyer, the money was not

to be disbursed until the judge rules on son's claims, which has never been done:

THE COURT:   And therefore its stamped in that you have a lien on it, and I haven't adjudicated on that.

MR. MARIN:  Oh good.

THE COURT:   I am only adjudicating the right to the proceeds subject to any valid lien that may attach thereto.

MR. MARIN:  Okay, well that's – thank you for clarifying that, your honor.

* * *

THE COURT:   Because the trustee didn't ask me to adjudicate on any liens. He said, *if* we're dividing money up.

A167, and A176 lines 9 and 14. TRANSCRIPT, Proceedings, In re: Marinkovic,

02-378 (Bkrtcy. D. Ariz. 10/28/2002), *record corrected May 6, 2007.*

Exhibit A178 is the 9/17/203 order of the bankruptcy judge staying

consideration of  son's adversary action 02-159 which would address son's claims

and this Homestead Fund, after the Chapter 11 Trustee asked the judge to freeze it.

So there is no chance the bankruptcy trustee did *not* know that he could not use that

Homestead Fund since he himself made the motion to stop the ruling on it.

Exhibit A181 is the transcript of the hearing for the Chapter 11 Plan on

10/8/03.  It shows the bankruptcy trustee's counsel saying there is no property yet

in the plan, no matter what it says: "it's whatever property you determine."

So, the bankruptcy trustee knew he was taking property not yet in the plan.

The rule is plainly that a bankruptcy trustee may not touch exempt property,

and may not use it for a bankruptcy plan.  In re: Sanford, 8 B.R. 761, 764 [2]

(Bkrtcy. N.D. Cal. 1981)(The trustee in bankruptcy stands junior to a prior declared and recorded homestead.);   In re: Hagel, 184 B.R. 793, 797 n.3 (9th Cir BAP 1995)(court trustee has no right to use an exempt fund in his plan).

Nor may he use for a settlement of any kind.   Callie v. Near, 829 F.2d 888, 890 (9th Cir. 1987)(bankruptcy court may not summarily force a settlement where the facts of the terms are in dispute); In re: Schugg, 2006 WL 1455568 [10](D. Ariz. 2006)(Teiborg, J.)(same, citing Callie, supra).

Nor may he pay attorneys with it.   In re: Graziadei, 32 F.3d 1408, 1410 n. 2. (9th Cir. 1994) (because homestead property is exempt from the estate, the bankruptcy court lacks jurisdiction to allow the bankruptcy trustee to take proceeds from the sale of homestead property to pay any lawyer's fees).

In fact, he cannot do *anything* with it until after the bankruptcy judge has determined it is in the bankruptcy estate and not exempt.   In re: Lewis, 113 F.3d 1040 (9th Cir. 1997)(bankruptcy court may not approve disbursal of funds until it first determines that the funds are in the bankruptcy estate);   In re: Hyman, supra, 123 B.R. 342, 348 [11] (9th Cir. BAP 1991) ("the debtor may remove some of the property by claiming exemptions"); In re Moffat, supra, 107 B.R. 255, 259 [1] (Bkrtcy. C.D. Cal. 1989), affirmed, 119 B.R. 201, affirmed, 959 F.2d 740 (9th Cir. ) (homestead exemption removes property from plan).

Because of this, the settlement payment, the lawyer's fees and every other charge made and paid, must be returned. <u>Mosier v. United Educ. & Software</u>, 285 B.R. 442, 446 [8](C.D. Cal.2002) (disgorgement possibility later prevents finality of loss which would allow appeal).

This is true even though the bankruptcy trustee has disposed of the funds: <u>Tivon v. England</u>, 484 F.2d 639, 641 (9th Cir. 1973)(When a fiduciary breaches a duty owed to a party by wrongfully disbursing the funds, the fiduciary may have an absolute liability to return the amount of the funds to the party, although the funds are no longer in the fiduciary's possession.); <u>In re: A & E Family Investment, LLC</u>, <u>supra</u>, 359 B.R. 249, 256 (Bkrtcy. D. Ariz. 2007); <u>In re: Beiny</u>, 16 A.D.3d 221, 791 N.Y.S.2d 24 (2005)(trustee to be charged for misappropriating funds of trust and breaching fiduciary duty).

Exhibit A47 is a letter son sent to the Trustee asking him to release the fund to the debtor. It was refused. Instead, the Chapter 11 Trustee's lawyer who took the property, sent son an offer of blackmail: he will give back less than 1/4 of the money they took if debtor and son waive all claims. This is the same kind of extortionate offer they gave to Mother to force her to the settlement they made with her lawyer, in which her lawyer gets his $35,000 attorney fee that he claimed in divorce court which he could not get in the bankruptcy cue, while Mother got little.

Exhibit A184 is son's most recent request that they give back the money.

In conclusion, son asserts as follows:

1. The other appeals did not deprive jurisdiction over this fund.

2. In re: Mantle, supra, and In re: A & E Family Investment, LLC, supra, gave debtor the right to bring that fund to the bankruptcy court so the court could see if he could take it with an exemption.

3. In re: California Trade Technical Schools, Inc., supra, is on-point and prevents the fund itself from being in the bankruptcy estate.

4. In re: Harrell, supra, also prevents the right to revoke *personal property* (money is personal property) from being exercised by the bankruptcy trustee.

5. In re Moffat, supra, however, allows the contingent beneficial interest of the fund to come into the bankruptcy estate, and the exemption applies to that.

6. In re: Golden, supra, holds that the exemption expires in six months only if the debtor had access to the proceeds and did not reinvest them; and governs here to make debtor entitled to the whole $75,000 because he was not allowed access.

7. It is arguable whether the bankruptcy trustee could have moved to get the remaining $20,000 of the fund because Harrell, supra, bars it. But the issue will not be reached because the bankruptcy trustee rejected all debtor rights in the plan, according to In re: Quintex Entertainment, Inc., supra, and In re: Hernandez, supra.

8. In re: Moses, supra would bar the trustee from reaching the property any way because son's lien even if 90% is eliminated, is still more than the $20,000 left.

Given this, son hopes for a ruling that $75,000 of the fund is exempt and releasing it to the debtor immediately so he can use it to pay for lawyers for the main appeal on the $400,000 apartments, and for dental and medical needs.

Son also seeks an eventual order releasing the remainder of the $93,346 as trust proceeds of sale directly to a qualified IRS 1031 escrow intermediary so debtor and son can then use it for reinvestment within six months; and son will plan on arguing in tax court later a tolling rule to fight penalties of late designation and tax loss of all of everything all over again, but under IRS §1031. Avery v. Associated Seed Growers, 211 Cal.App. 2d 613, 27 Cal.Rptr. 625, 637 [20] (1963) (refusal of court to act extends the statute of limitations period for filing).

DATED:   June 22, 2007